# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| CONCURRENT VENTURES, LLC AND XTREAMEDGE, INC., | § § | |
| Plaintiffs, | § | A-24-CV-335-DII |
| V. | § § | |
| ADVANCED MICRO DEVICES, INC. AND PENSANDO SYSTEMS, INC., | § § § | |
| Defendants. | § § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Before the court are Advanced Micro Devices, Inc. and Pensando Systems, Inc.'s Opposed Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. 33) and all related briefing (Dkts. 35, 44, 48, 49) as well as Defendants Advanced Micro Devices, Inc. and Pensando Systems, Inc.'s Motion to Dismiss Pursuant to 35 U.S.C. § 101 and FED. R. CIV. P. 12(b)(6) (Dkt. 23) and all related briefing (Dkts. 31, 32).[1] After reviewing the pleadings and the relevant case law, the undersigned submits the following Report and Recommendation to the District Court.

**I.    BACKGROUND**

Plaintiffs XtreamEdge, Inc. and Concurrent Ventures, LLC assert Defendants Advanced Micro Devices, Inc. ("AMD") and Pensando Systems, Inc. infringe four patents: U.S. Patent Nos. 8,924,596; 10,873,753; 10,985,943; 10,944,634; 9,529,767 (collectively, the "Asserted Patents"). Dkt. 1 (Compl.) ¶ 7. XtreamEdge is the assignee of the Asserted Patents, and Concurrent Ventures

---

[1] The motions were referred by United States District Judge Robert Pitman to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated October 17, 2024.

is the exclusive licensee to the Asserted Patents and has all substantial rights to the Asserted Patents. *Id*. ¶¶ 8-9. The Asserted Patents increase the efficiency of communications between Central Processing Units ("CPUs") and other network components by offloading data-centric computations to more efficient units designed to handle data computations. *Id*. ¶ 4.

Pensando was founded in 2017 in NDCA. Pensando pursued similar solutions as the Asserted Patents and called its product a Data Processing Unit ("DPU"). *Id*. ¶ 5. AMD acquired Pensando in 2022. *Id*.; Dkt. 33 (Transfer Mtn.) at 2. Plaintiffs accuse AMD Pensando's Data Processing Unit ("DPUs") products of infringement. Compl. ¶ 29 ("The Accused Products are all products including or related to AMD's DPU technology, including without limitation, AMD's Pensando Data Processing Units including the AMD Pensando Giglio Data Processing Unit, the Elba Data Processing Unit, the Capri Data Processing Unit, and future versions, such as the announced Salina Data Processing Unit, the AMD Pensando Distributed Services Card, the AMD Pensando Distributed Services Platform, the AMD Pensando DPU system, the AMD Pensando SmartNIC, the AMD Pensando SmartSwitch, the AMD Pensando Software-In-Silicon Development Kit ('SSDK') and reference pipelines, as well as any products incorporating those items" (collectively the "Accused Products").

Defendants have moved to dismiss the '634 Patent as invalid under 35 U.S.C. § 101 and have moved to dismiss Plaintiffs' infringement claims as inadequately pleaded under Rule 12(b)(6). Dkt. 33. Defendants have also moved to transfer the case to the Northern District of California ("NDCA") under 28 U.S.C. § 1404(a). Dkt. 33. The court will first address the motion to transfer.

**II.     MOTION TO TRANSFER**

    **A.     Appliable Law**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district court where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023). In patent cases, the Federal Circuit follows regional circuit standards governing motions under § 1404(a). *Id.* (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)). The Fifth Circuit has made clear that while "the decision of whether to transfer a case is committed to the district court's discretion," *In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022), when a movant "demonstrates that the transferee venue is clearly more convenient" the district court "should" grant transfer, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *see also Planned Parenthood*, 52 F.4th at 629 ("The ultimate inquiry is whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.' ") (quoting *Volkswagen*, 545 F.3d at 315).

The Fifth Circuit has identified "private and public interest factors," which are "not necessarily exhaustive or exclusive," to be evaluated in connection with determining whether a case should be transferred. *Google*, 58 F.4th at 1382 (citing *Planned Parenthood*, 52 F.4th at 630 (internal quotation marks omitted)). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case;

and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*.

**B.     Analysis**

There is no dispute that suit could have been brought in NDCA. *See* 28 U.S.C. § 1391. Both AMD and Pensando are headquartered in NDCA.

Plaintiffs have no ties to Western District of Texas ("WDTX"). XtreamEdge is a Delaware corporation headquartered in Johns Creek, Georgia. Compl. ¶ 8. Concurrent Ventures is a Georgia corporation also headquartered in Johns Creek, Georgia. Compl. ¶ 9.

"Plaintiffs accuse AMD Pensando's Data Processing Unit ("DPUs") products of infringement (the 'Accused Products')." Dkt. 35 (Transfer Resp.) at 2 (citing Compl. ¶ 29). "The Accused Products include both DPU products released before Pensando was acquired by AMD in 2022 and after." *Id*. "Pensando's technical development and operation, financials, and marketing (both before and after acquisition) are all broadly relevant to this case, as they directly relate to the Accused Products and their value." *Id*.

Accordingly, the parties' arguments center on the location of documents and witnesses. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.")

    1. <u>Private Interest Factors</u>

    *(a) Convenience and Cost of Attendance for Willing Witnesses*

The convenience and cost of attendance for witness is an important, if not the most important factor. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Although some courts have historically given party witnesses little to know weight, the Federal Circuit has rejected

this approach. *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) ("We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them."). Under the "100–mile" rule, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled beyond 100 miles. *Genentech*, 566 F.3d at 1344. However, the "100–mile" rule should not be rigidly applied if witnesses will be forced to travel a significant distance or time to reach either venue. *Id*.

In support of their motion, Defendants identify a list of witnesses with specific knowledge regarding the Accused Products. With the exception of Francis Matus (Pensando's Vice President of Engineering and an AMD Vice President of Engineering), who is located in Georgia, the identified individuals are located in NDCA. They are: Michael Galles, Pensando's ASIC Architect & Designer and an AMD Senior Fellow Engineer; Krishna Doddapaneni, Pensando's Vice President of Software Engineering and AMD's Corporate Vice President, Software Development; Eddie Tan, Pensando's Vice President of Technical Product Management and AMD's Senior Director, Product Management for Pensando products; Stuart Stammers, Pensando's Vice President of Business Development and Corporate Vice President, Commercial Sales; Randy Pond, Pensando's Chief Financial Officer and Vice President of Operations and AMD's Corporate Vice President, Finance; and Yelena Fadeyeva, Pensando's Controller and AMD's Director, Finance.

Defendants also identify Diane Ramos, AMD's Senior Director HR Business Partner, who is located in WDTX and has knowledge of Pensando's personnel, products, and acquisition by AMD. Ramos submitted a Declaration and Supplemental Declaration in support of Defendants' motion, in which she identified employees with relevant knowledge and compared employees

identified by Defendants with those identified by Plaintiffs. Dkts. 33-1 (Ramos Decl.), 44-1 (Ramos Suppl. Decl.).

In response, Plaintiffs identify nine of Defendants' WDTX employees as persons with relevant knowledge. Specifically, Defendants identify Forrest Norrod, AMD's Executive Vice President and General Manager of the Data Center Solutions Business Unit; Mark Papermaster, AMD's Executive Vice President and Chief Technology Officer; Robert Hormuth, AMD's Corporate Vice President, Architecture and Strategy, Data Center Solutions Group; Patrick Kramer, AMD Pensando's Senior Member of Technical Staff (SMTS) and formerly Senior Systems Engineer at Pensando; Kalyan Bade, AMD Pensando's Corporate Vice President and formerly Senior Director of Engineering at Pensando; Glen Campbell, AMD's Software Platform Architect of the Cluster Platform Engineering (CPE) Group; Erik Richardson, who is in AMD Pensando's Sales Business Development and formerly Pensando's Director of Business Development; and Tim Zazado, AMD's Senior Engineering Manager of Global Operations–Client, Embedded, Pensando Cost of Goods Sold (COGS). Finally, Plaintiffs assert Kim Vo, AMD's Corporate Vice President of Legal, has relevant knowledge. Plaintiffs argue Kramer and Bade "are the engineers who developed the infringing products at Pensando"; Norrod and Papermaster, and Vo are "the technical and business managers at AMD who evaluated Pensando and the Accused Products to make the decision to acquire it, and then integrated Pensando into AMD"; Hormuth, Kramer, Bade, and Campbell are "the engineers who work on the Accused Products now, including new products that were released after acquisition"; and Richardson and Zazado are "the financial and marketing employees for the Accused Products." Transfer Resp. at 10.

Plaintiffs also identify five of Defendants' employees that are within Texas but outside of WDTX: Kyle Whitmill, AMD Pensando's Senior Field Application Engineer, located just outside Houston, Texas; David Gurley, AMD Pensando's Principal Systems Engineer, located in the Dallas-Fort Worth area; Don Zaino, AMD Pensando's Technical Sales Manager, located in the Dallas-Fort Worth area; Ben Mathews, AMD Pensando's Business Development Director,[2] located just outside the Dallas-Fort Worth area; Patrick Simmons, an AMD Pensando Technical Lead, located in the Dallas-Fort Worth area. Plaintiffs also point to two of their own employees—Jesse Beeson (a named inventor on the Asserted Patents), and Stacy Kenworthy—both of whom live and work in Georgia.

Plaintiffs argue the Ramos Declaration is non-specific and Defendants only make high-level assertions about witnesses' knowledge. Plaintiffs contend there is at least as much or more evidence showing the WDTX employees are relevant as there is showing the NDCA employees are relevant. Plaintiffs assert Defendants have not shown the NDCA employees have such unique knowledge that the WDTX employees cannot be brought to trial in their stead. Plaintiffs contend that if trial is in WDTX, Defendants only need to bring WDTX witnesses, but if trial is in NDCA, at least some WDTX witnesses will need to travel to NDCA. Plaintiffs also argue that WDTX is more convenient for witnesses who live in Texas but outside WDTX and witnesses who live in Georgia.

In reply, Defendants contend Plaintiffs appear to have found their identified witnesses on LinkedIn. Further, Defendants argue the witnesses they identified "are far superior witnesses in every respect—they are closer to, have longer tenure with, and know more about, the accused Pensando products." Transfer Reply at 1. Defendants argue the employees Plaintiffs identified

---

[2] Defendants also assert that Mathews "owned the strategic relationship with Hewlett Packard Enterprise" ("HPE"). Transfer Resp. at 5 (cleaned up).

oversee Pensando products at a very high level, do not specifically focus on Pensdano's products, and/or work on Pensando products only to the extent they are within AMD's larger portfolio of products. Specifically, Defendants point out that Norrod and Papermaster are executives of the entire AMD global organization. Although they oversee Pensando products, along with a variety of unrelated products, they do so at an executive level and they are not nearly as close to the Accused Products as Pensando's employees are.[3] In contrast, Jain and others Defendants identified would know more about Pensendo products. Simmons, an AMD Pensando technical lead in the DFW area that Plaintiffs identified, reports to Matus and would be cumulative of Matus. Hormuth and Campbell, identified by Plaintiffs, were not Pensando employees before the acquisition. They both work in AMD's Data Center Solutions Group, of which Pensando is only a small part, and their testimony would be cumulative to the engineering witnesses Defendants identified. Kramer, Bade, Whitmill, and Elbrus, identified by Defendants, all report or reported to Doddapaneni and would be cumulative to his testimony. Richardson, Zaino, Gurley, and Mathews report to Stammers and/or would be cumulative to his testimony. Defendants also assert Mathew's involvement with HPE is not relevant to this suit. Zazado and Olsen were not Pensando employees before the acquisition and would be cumulative to Pod and Fadeyeva. Finally, Defendants point out that Plaintiffs did not identify what knowledge in-house counsel Vo has that would be discoverable.

Plaintiffs argue that Defendants should not get to decide which witness's knowledge is cumulative and Defendants' motion should not be granted just because Defendants' preferred witnesses are in NDCA. The court recognizes there is a certain imbalance at play here—in a patent

---

[3] In proffering them, Plaintiffs cite articles in which they are both quoted as discussing Pensando's products and its acquisition. See Transfer Resp. at 3 (citing Transfer Resp. Exhs. 7, 8, 9. But, instead of supporting Plaintiffs' position, these articles make Defendants' point. These individuals are such high executives at AMD that they are unlikely to have any relevant knowledge about Pensando.

infringement suit the defendant is often the only party who can identify which of its employees are most knowledgeable on infringement or financial issues. There is little way for a plaintiff to glean this knowledge this early in the case. One way—scouring sites like LinkedIn, as Plaintiffs appear to have done—is not considered reliable. *See In re Google LLC*, No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) (finding the "likelihood that [an identified employee of the defendant] would provide relevant evidence for [the plaintiff] is thus highly speculative" when his identification as a relevant witness was only supported by this LinkedIn page).

In this case, however, common sense suggests more witnesses will exist is NDCA than in WDTX. Plaintiffs accuse Pendsando's products, many of which were designed or made before AMD acquired Pensando in 2022. Pensando was located in NDCA before the acquisition, and its workforce primarily remains in NDCA. It has 219 employees in NDCA, 203 of which are engineers, 115 engineers in India, and 12 employees in Texas.

Not only does common sense support Defendants' position, but Defendants' identification of knowledgeable witnesses does so as well. In their reply brief, Defendants explain why their witnesses are not merely "preferred" but actually superior in terms of the knowledge they could bring to trial. In multiple instances, one employee identified by Defendants could testify on the same subjects as multiple employees identified by Plaintiffs. Thus, simply counting identified witnesses, as Plaintiffs suggest, leads to an erroneous result. Defendants did not identify every employee in NDCA with relevant knowledge—surely that would be multiples greater than both sides combined identified. Rather, they identified those who have the best knowledge. Defendants' identification of witnesses is far more credible that Plaintiffs.

The court recognizes that WDTX would be more convenient for witnesses from both Georgia and WDTX, but it appears that the greater number of actually relevant witnesses are in NDCA. For them, NDCA is clearly more convenient.

This factor favors transfer.

*(b) Relative Ease of Access to Sources of Proof*

This factor focuses on the location of documents and physical evidence relating to the case. *TikTok, Inc.*, 85 F.4th at 358. "The question is *relative* ease of access, not *absolute* ease of access." *Id*. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *Id*. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345. "But when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis. *TikTok*, 85 F.4th at 358 (quoting *Planned Parenthood* , 52 F.4th at 630).

Defendants argue that Pensando developed the Accused Products in NDCA and that is where the relevant evidence is stored. According to Defendants, technical, financial, and marketing documents for the Accused Products are primarily accessed from NDCA. The source code is also stored in NDCA, and individuals with source code access are primarily located in NDCA and India. Defendants also argue that the documents of the prosecuting attorney for the Asserted Patents are located in NDCA.

Plaintiffs primarily rely on Defendants' employees they identified in WDTX and criticize Defendants' assertion that documents are "primarily" accessed from NDCA and individuals with source code access are "primarily" located in NDCA and India. Plaintiffs also argue employes in

10

WDTX are "developing new, infringing products (and creating new 'sources of proof') in WDTX." Transfer Resp. at 17 (citing Compl. ¶ 29 (accusing the upcoming "Salina Data Processing Unit"). Plaintiffs also assert Hewlett Packard Enterprise ("HPE") employees in WDTX likely have relevant documents and other HPE documents are likely in Texas. Plaintiffs also criticize the Ramos Declaration as non-specific as to what documents are accessible from WDTX and rely on *Resonant Systems, Inc., v. Apple, Inc.*, Case No. 7:23-CV-00077-ADA, Dkt. 83 (W.D. Tex. Apr. 18, 2024), in which another district court found a non-specific declaration inadequate to allow the court to assess the relative ease of access to proof.

As Plaintiffs recognize, it is not simply the location of documents that is relevant but also the location of document custodians and where the documents are created and maintained. *See* Transfer Resp. at 16 (citing "*Jawbone Innovations, LLC v. Meta Platforms, Inc.*, No. 6:23-cv-00158, Dkt. 93 at 11 (W.D. Tex. Aug. 7, 2024) ('[I]t is likely that these employees are custodians for the relevant electronic documents.') []; *In re Google LLC*, No. 2021-178, 2021 WL 5292267, *2 (Fed. Cir. Nov. 15, 2021) (courts should 'consider[] the location of document custodians and the location where documents are created and maintained'))." The court agrees that relevant documents and source code could probably be accessed from the WDTX, but the evidence demonstrates that more individuals who will have a better grasp of what documents and source code exist and where those are electronically located are in NDCA. *See* Dkt 33-1 (Ramos Decl.) ¶¶ 11-14 (stating the engineers working on the Accused Products are primarily in NDCA, the financial leadership team for the Pensando products is in NDCA, and the technical and marketing documents are primarily accessed from NDCA); Dkt. 44-1 (Supp. Ramos Decl.) ¶¶ 2, 4 (stating Pensando has 8 employees in Austin versus 203 engineers in NDCA). In the court's experience, document production in complex patent cases, such as this, is not a simple matter. There are often

11

issues of whether production was sufficient and the need for a producing party to go back to its document custodians to search for more documents or confirm their non-existence. It is not merely an issue of what computer terminal can access documents, but who has the knowledge to know where to look for documents. In light of Defendants' identification of witnesses and documents, Plaintiffs have not convinced the court that the NDCA does not provide the *relative* ease of access to proof as to Defendants' documents.[4]

Plaintiffs are located in Georgia and do not argue they have any relevant documents in WDTX or NDCA.

Accordingly, the undersigned finds this factor favors transfer.

### (c) Availability of Compulsory Process

Defendants identify two non-party NDCA witnesses with relevant knowledge of the Accused Products or Asserted Patents: Prem Jain, Pensando's former CEO and AMD's former Senior Vice President and General Manager; and Michael Gencarella, an attorney who prosecuted the Asserted Patents. Defendants also identify (now) non-party NDCA witnesses that were at a 2014 meeting[5] between Plaintiff's commercialization agent and AMD that Plaintiffs use to allege willfulness: Anil Rao, AMD's former Corporate Vice President, Products; and Dhiraj Mallick, AMD's former General Manager and Corporate Vice President. Finally, Defendants argue that the accused components and features of two Asserted Patents comply with the NVME standard and that standard setting organization is located in Oregon.

Plaintiffs argue they have identified ten non-party witnesses with relevant information in WDTX or Texas including three former Pensando employees who worked on the Accused

---

[4] Plaintiffs also point to documents that HPE may produce, but for the reasons stated in the next section, the court gives this argument little weight.

[5] Plaintiffs allege this meeting was "on-site at AMD," Compl. ¶ 30, but they do not clarify whether it was in WDTX or NDCA.

Products: Togroul Elbrus, formerly Pensando's Director of Field Application Engineering from October 2019 to May 2022 and Pensando's Senior Software Development Manager until June 2024; Scott Olsen, formerly AMD's Vice President, Finance, Datacenter Solutions Group until August 2023; and Matthew Stauble, formerly an Advisor at Pensando Systems until March 2022. Plaintiffs also identify three HPE employees that worked on implementing the Accused Products into HPE's devices: Reza Soltani, formerly an HPE Worldwide Go-to-Market Lead, DPU Datacenter Networking; Marc Faulkenbery, formerly HPE's Vice President of Finance for North America Sales; Shawn O'Connor, formerly an HPE Senior Software Engineer who "led investigations into Pensando firmware updates"; and Krista Satterthwaite, HPE's Senior Vice President and General Manager, Mainstream Compute. Plaintiffs identify three other witnesses in Texas they contend have relevant information: Mark Potter, a Member of AMD Pensando's Board of Advisors since 2021 and previous Member on Pensando's Board of Directors from 2019 to 2020; Jay Ashok Modh, the Founder and CEO of IntuitiveVC, which was an early Pensando investor; and Ashok Modh, an Investor and Advisor at IntuitiveVC.

In response to Defendants' arguments, Plaintiffs contend Gencarella has an office in this District and regularly works in WDTX and is therefore subject to this court's subpoena power under Rule 45(c)(1)(A). Plaintiffs assert the standard-setting organization in Oregon is outside NDCA's subpoena power and Plaintiffs did not explain how it is relevant to this suit.

Defendants dispute the relevance of most of Plaintiffs' identified witnesses. Defendants argue Plaintiffs' witnesses were found on LinkedIn and their relevance is speculative at best and does not overcome Defendants' representations regarding the most knowledgeable witnesses. Specifically, Defendants argue Elbrus reported up to Doddapaneni, identified by Defendants, and his testimony would be cumulative to Doddapaneni; Olsen did not work for Pensando before the

13

acquisition, only worked on finance matters, and is cumulative to Pond and Fadeyeva, identified by Defendants; and Stauble's knowledge as a Pensando "Advisor" would be cumulative to Stammers's and Tan's knowledge, who were identified by Defendants. Defendants also argue HPE's employees are irrelevant as they were not employees of HPE's subsidiary Aruba, which made the products that incorporated the Accused Products. Specifically, Defendants argue Soltani's, Faulkenbery's, O'Connor's, and Satterthwaite's knowledge is either irrelevant or cumulative. Defendants dispute that Potter is currently a member of AMD Pensando's Board of Advisors and argue that, even if he is, Plaintiffs have failed to show he has any knowledge of the Accused Products that is not cumulative. Similarly, Plaintiffs assert Defendants failed to show that Jay Ashok Modh and Ashok Modh have any relevant, noncumulative knowledge.

In their surreply and sur-surreply briefs, the parties continue to argue about which side gets to decide whose knowledge is relevant or noncumulative. Plaintiffs also attack Ramos's Supplemental Declaration and how she could have determined who "know[s] more."

The court agrees with Plaintiffs that Defendants have not shown the Oregon-based standard setting organization has any relevant witnesses. The court also agrees with Plaintiffs that Gencarella is subject to either District's subpoena power. However, the court agrees with Defendants that Plaintiffs have not shown that Potter or investors Jay Ashok Modh and Ashok Modh have any relevant knowledge. These individuals are too far removed to expect them to have any relevant knowledge about how the Accused Products function or are monetized.

The court is also not convinced that any HPE employee has relevant knowledge. Plaintiffs argue that "[t]he case also concerns third-party products that 'incorporat[e]' the [Accused Products], such as 'HPE Aruba Networking CX 10000 Series Switch with AMD Pensando.' Dkt. 1, ¶¶29, 53, 55, 65, 68, 80." Transfer Resp. at 2. But, like Pensando to AMD, Aruba is an NDCA

subsidiary of HPE. Moreover, HPE is not mentioned in the Complaint, and Aruba is only mentioned in websites cited within the Complaint. Compl. ¶¶ 53, 55, 65, 80. While the Accused Products are incorporated in Aruba's products, Aruba is not a party to this suit and is not accused of infringement here. Although Aruba employees may have some knowledge of how the Accused Products are integrated into their products, Plaintiffs have not convinced the court that Aruba's parent company's employees will have knowledge about how the Accused Products function.

Interesting, Aruba is based in NDCA, Defendants do not identify any Aruba employees as having relevant knowledge. The court assumes that this is because infringement will focus on how the Accused Products function, not how the Accused Products are integrated into Aruba's products. That Defendants do not argue NDCA Aruba employees are relevant enhances the credibility of their arguments and strongly undermines Plaintiffs' arguments and credibility.

Based on the witnesses identified by Defendants, which, except for Gencarella were not disputed by Plaintiffs, this factor favors transfer.

### (d) All Other Practical Problems

The parties agree that the consideration of "all other practical problems that make trial of a case easy, expeditious, and inexpensive" is neutral. Transfer Mtn. at 17; Transfer Resp. at 18.

### 2. Public Interest Factors

### (a) Court Congestion

As to court congestion, Defendants point out that the Federal Circuit has "noted that 'the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.'" Transfer Mtn. at 18; *Juniper Networks*, 14 F.4th at 1322 ("We have noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics."). In contrast, Plaintiffs argue that

"[o]ver the last five years, the average time to trial for patent cases was 27 months in WDTX and 33 months in NDCA." Transfer Resp. at 19. However, Plaintiffs' response ignore the Federal Circuit's warning that "it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order for setting a trial date." *Juniper*, 14 F.4th at 1322.

Plaintiffs' argument also ignores the current status of the Austin Division. Although the Austin Division is currently allotted three District Judges, Judge Pitman has been the only assigned District Judge since May of 2023. *See* "Austin's Sole Federal District Judge May Be the Most Overburneded in America," The Austin Chronicle (Sept. 29, 2023), available at https://www.austinchronicle.com/news/2023-09-29/austins-sole-federal-district-judge-may-be-the-most-overburdened-in-america/. Currently, nearly all cases filed in Austin are set for trial before him, even if they are assigned to the placeholder-DII docket, as this case is. *See* Dkt. 52 (Scheduling Order). Although this case is set for a May 2026 trial date before Judge Pitman, so are numerous other cases. *See id*. While it has been announced that Judge Albright will soon be joining the Austin Division from the Waco Division, he will do so while still managing the Waco docket until his successor is appointed there. Although the undersigned believes Judge Pitman, the other Magistrate Judges, and the court staff have done an impressive job keeping the Austin Dockets moving, he cannot in good conscious say this factor is neutral. Accordingly, the undersigned finds this factor weighs in favor of transfer.

     *(b) Local Interest*

Plaintiffs argue WDTX has a greater local interest because most employees working on the Accused Products are now in WDTX, but that is based on Plaintiffs' identification of witnesses, not objective fact. Pensando was founded in NDCA, is still based in NDCA, and it is primarily, if

16

not entirely,[6] responsible for the Accused Products in this case. *See In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) ("As our precedent has made clear, an assessment of the local interest factor must focus on whether there are 'significant connections between a particular venue and the events that gave rise to a suit.'") (cleaned up). This suit's only tie to WDTX is that Pendsando is one of AMD's 75 subsidiaries and AMD has a substantial campus here. Accordingly, this factor weighs in favor of transfer.

### (c) Familiarity of the Forum with the Law

Infringement, invalidity, and damages will be determined by the Federal Circuit's precedents. Either district is equally familiar with and capable of applying that law. Defendants argue that AMD signed a nondisclosure agreement in 2014 with Plaintiffs' commercialization agent and interpretation of its terms "has already proven critical to this case." Transfer Resp. at 20 (citing Dkt. 31 (Dismiss Resp.) at 17-19). But the undersigned's review of that filing did not find any reference to a nondisclosure agreement. That section of the brief was directed to whether Plaintiffs had adequately pleaded willfulness based on a 2014 meeting between Plaintiffs' commercialization agent and AMD. Moreover, Plaintiffs' do not describe how, if it were necessary to interpret the nondisclosure agreement, Texas's and California's law would differ in any material way. This factor is neutral. Both WDTX and NDCA are equally familiar with and capable of applying the relevant law.

### (d) Avoidance of Conflicts of Law

Finally, both sides agree that there are no relevant conflict of law or foreign law issues. Transfer Mtn. at 20; Transfer Resp. at 20. This factor is neutral.

---

[6] Plaintiffs imply that the "announced Salina Data Processing Unit," Compl. ¶ 29, is being designed in WDTX but do not point the court to evidence of that. Meanwhile, Defendants often refer to all of the Accused Products belonging to Pensando rather than AMD.

## C. Conclusion

This case's tie to WDTX is that Pensando is one of AMD's 75 subsidiaries. But, Pensando remains headquartered in the NDCA, where the Accused Products were designed. The court acknowledges that some WDTX AMD or AMD Pensando employees will have relevant information, but NDCA will be more convenient for more witnesses, will be the focus of document production, and will have superior subpoena power over unwilling witnesses. Additionally, NDCA has a greater local interest in this matter and a greater capacity to handle this suit. All of the disputed factors favor transfer. Accordingly, the undersigned recommends that Defendants' motion be granted and this case be transferred to NDCA.

## III. MOTION TO DISMISS

Defendants assert the '634 patent is invalid under 35 U.S.C. § 101 and Plaintiffs have failed to state a viable claim for relief as to the remaining four patents. Because the undersigned recommends this case be transferred to NDCA, the undersigned recommends that motion be dismissed without prejudice to refiling in that District.

## IV. RECOMMENDATIONS

For the reasons stated above, the undersigned **RECOMMENDS** that the District Judge **GRANT** Advanced Micro Devices, Inc. and Pensando Systems, Inc.'s Opposed Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. 33).

Additionally, the undersigned **RECOMMENDS** that the District Judge **DISMISS WITHOUT PREJUDICE** Defendants Advanced Micro Devices, Inc. and Pensando Systems, Inc.'s Motion to Dismiss Pursuant to 35 U.S.C. § 101 and FED. R. CIV. P. 12(b)(6) (Dkt. 23).

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED January 31, 2025.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE